UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOVITA M. S.,[1] | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   CAUSE NO. 3:22-CV-1039-MGG |
| MARTIN O'MALLEY,[2] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |
| | ) |
| | ) |

**OPINION AND ORDER**

Plaintiff Jovita S. ("Ms. S") seeks judicial review of the Social Security Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1)) and 42 U.S.C. § 405(g). [DE 6]. For the reasons stated below, the Court remands this case for further proceedings consistent with this opinion.

**I.   OVERVIEW OF THE CASE**

On April 7, 2020, Ms. S applied for DIB alleging a disability onset date of November 27, 2019. Ms. S's claim was denied initially on July 29, 2020, and upon reconsideration on October 27, 2020.

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Martin O'Malley was sworn into the office of Commissioner of Social Security on December 20, 2023, and he is substituted as Defendant is his official capacity as Commissioner.

Following a video hearing on April 28, 2022, an Administrative Law Judge ("ALJ") issued an unfavorable decision on May 9, 2022. When the SSA Appeals Council denied Ms. S's request for review on November 28, 2022, the ALJ's decision became the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. S timely sought judicial review of the Commissioner's decision on December 19, 2022. On March 14, 2023, Ms. S filed her opening brief. Thereafter, the Commissioner filed a responsive memorandum on April 24, 2023. This matter became ripe on May 8, 2023, when Ms. S filed her reply.

## II.  APPLICABLE STANDARDS

### A.  Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations as to: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can

2

perform her past relevant work based upon her residual functional capacity; and, if not, (5) whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### B. Standard of Review

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals.

3

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Accordingly, at a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "The ALJ must confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). As such, an ALJ's decision will lack sufficient evidentiary support and require remand if the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Conversely, "[a]n award of benefits is appropriate only where all factual

issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## III.   ANALYSIS

### A.   The ALJ's Decision

Ms. S's video hearing before an ALJ on her DIB application took place on April 28, 2022. On May 9, 2022, the ALJ issued his written decision finding that Ms. S was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. S had not engaged in substantial gainful activity since her alleged onset date of November 27, 2019.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. Here, the ALJ found that Ms. S suffers from the following severe impairments: carpal tunnel syndrome, cervical spine degenerative disc disease, headaches, and obesity. [DE 8 at 19-21]. Conversely, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.,* 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that that Ms. S had the

following non-severe medically determinable impairments: anxiety, depression, and post-traumatic stress disorder (PTSD). [*Id.* at 16].

At Step Three, the ALJ found that none of Ms. S's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered listings 1.15, 1.18, and 11.14, as well as SSR 19-4p and SSR 19-2p here. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. S can perform her past relevant work based upon her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ found that Ms. S had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> except she can occasionally reach overhead, frequently reach in all other directions, and frequently handle, finger, and feel. She can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds, never work at unprotected heights, never around dangerous machinery with moving mechanical parts, never operate a motor vehicle as part of her work-related

> duties, and never balance, as the term is defined in the SCO. She is limited to simple, routine tasks with no assembly line work or strictly enforced hourly production quotas.

[*Id*. at 23]. Based on this RFC, at Step Four, the ALJ found that Ms. S was unable to perform her past relevant work as an assembler, electro-mechanical (DOT# 828.381-018, SVP 7, medium exertion as generally and actually performed). [*Id.* at 30]. Accordingly, the ALJ moved on to the last step in the five-step sequential analysis to determine whether Ms. S could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). ALJs typically enlist a vocational expert ("VE") to testify regarding which occupations, if any, a claimant can perform. *See* S.S.R. 83-12. VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified the following three representative jobs that Ms. S could still perform with her RFC—mail clerk, office helper, and collator operator—which, respectively, have 12,300 jobs nationally, 10,400 jobs nationally, and 40,000 jobs nationally (62,700 jobs total). [*Id.* at 31].

Finding that Ms. S could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. S was not under a disability as defined in the Act. [*Id.* at 31].

B.     Issues for Review

Ms. S raises two issues for the Court's review, both of which rest on Ms. S's assertion that the ALJ failed to properly evaluate the evidence and create a logical bridge between the evidence and the conclusion that Ms. S retained an RFC for light work with additional limitations. First, she contends that the ALJ failed to properly evaluate the medical evidence regarding her headaches by omitting evidence regarding her c3 nerve injury, resulting in an RFC that fails to account for all her headache pain and limitations. Second, she argues that the RFC fails to account for all her handling and fingering limitations. As a result, Ms. S. contends that her RFC is not based on substantial evidence and remand is required.

Finding that the ALJ failed to properly consider Ms. S's headache pain from her c3 nerve injury and relied on cherry-picked evidence regarding the effectiveness of headache treatments to formulate Ms. S's RFC, remand is required.

C.     Discussion

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*.  The RFC is the ***most*** someone "can do despite their mental and physical limitations." 20 CFR § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or

her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence.  First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms.  Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a).  The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering subjective statements regarding symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a). Relevant factors include:

> (1) The individual's daily activities;
> (2) Location, duration, frequency, and intensity of pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) Type, dosage, effectiveness, and side effects of any medication;
> (5) Treatment, other than medication, for relief of pain or other symptoms;
> (6) Other measures taken to relieve pain or other symptoms;

>  (7) Other factors concerning functional limitations due to pain or other symptoms

See id. § 404.1529(c)(3). This analysis must focus on "the extent to which the symptoms reduce the individual's capacity to perform work-related activities." *Wade v. Berryhill*, No. 2:17-CV-278, 2018 WL 4793133, at *10 (N.D. Ind. Oct. 4, 2018) (citing SSR 16-3p). Moreover, the ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

As stated, Ms. S first contends that the ALJ failed properly evaluate evidence regarding her c3 nerve injury throughout the decision, resulting in critical gaps in the ALJ's evaluation of her headaches and determination of her RFC. Specifically, Ms. S alleges that, at best, the ALJ's RFC analysis improperly merged consideration of her migraine headaches with her c3 nerve injury or that, at worst, the ALJ omitted consideration of her nerve injury pain altogether. Either way, Ms. S contends that her RFC is erroneously based only on evidence showing her improved migraine symptoms.

The ALJ found headaches to be a severe impairment and acknowledged Ms. S's testimony that she "has tension headaches that turn into migraines approximately 4 times a week" and that "she lies down 95% of the day." [DE 8 at 24]. The ALJ then

summarized treatment records regarding Ms. S's headaches. Records show that Ms. S reported chronic migraine headaches since childhood and that she sought treatment for her migraines with a neurologist, Dr. Alnahass. [DE 8 at 26, 1421]. On January 26, 2021, her neurologist prescribed her Emgality injections to alleviate her migraines. [*Id.* at 1425]. Records show that the Emgality injections controlled her migraine symptoms for some duration. [*Id.* at 27, 1399, 1408, 1409, 1414]. These same treatment records also show that Ms. S later complained of "left-sided head pain that was different from her migraine pain." [*Id.* at 27, 1414]. Ms. S sought treatment for this additional pain in April 2021, and it was separately diagnosed as "cervico-occipital neuralgia." [*Id.* at 1418]. Records suggest that this pain was caused by a procedure Ms. S underwent in 2019 to alleviate chronic pain she was experiencing in her left neck, shoulder, and arm. [*See id.* at 569; 737; 763; 1418]. During the procedure, an injection damaged a nerve at the C3 level of her cervical spinal cord. [*Id.* at 576; 763].

Ms. S contends that the ALJ failed to address evidence demonstrating that her occipital neuralgia caused ongoing symptoms and limitations even though the record reflects the separateness of the migraines from the occipital neuralgia. Ms. S maintains that while she received some relief from her migraines due to the Emgality injections [*Id.* at 1408-09], her visits with Dr. Alnahass in April and June 2021 show that she reported continued head pain stemming from the occipital neuralgia in April and June 2021. [*Id.* at 1405, 1408-09]. Thus, during these visits, her migraines were distinguished from the occipital neuralgia. [*Id.*] (noting them as separate conditions, with Emgality

11

treatments listed under the chronic migraines). Another neurologist likewise observed her migraines as distinct from the occipital neuralgia in August 2021. [*Id.* at 733].

The ALJ's summary of the evidence does acknowledge that Ms. S suffered from both migraine headaches and a separate "left-sided head pain." [*Id.* at 27]. But even though the ALJ mentioned this separate headache pain, the ALJ makes no mention of Ms. S's separate diagnosis of occipital neuralgia, nor does he address her complaints of separate, ongoing pain from this issue when formulating the RFC—pain that was not addressed by Emgality. *John L. v. Saul*, No. 4:19CV18, 2020 WL 401887, at *12 (N.D. Ind. Jan. 23, 2020) (observing that "summarizing the evidence is not a substitute for analysis") (internal citations omitted); *see also Smith v. Astrue*, No. 09 C 6210, 2011 WL 722539, at *12 (N.D. Ill. Feb. 22, 2011) (stating "cataloguing [evidence from the record] is no substitute for analysis or explanation"). Moreover, the ALJ based the RFC determination on the Emgality's reported effectiveness for Ms. S's migraines [*see* DE 8 at 29]. In doing so, the ALJ failed to address evidence where Ms. S reported that the Emgality did not control pain from occipital neuralgia. Without such analysis, the Court is unable to follow the ALJ's reasoning, and therefore, the Court cannot be assured that the ALJ all the important evidence here. *Scott*, 297 F.3d at 595.

What's more, the ALJ also discounts Ms. S's testimony regarding the severity of her headaches by focusing solely on the reported effectiveness of Ms. S's Emgality injections for her migraines, stating that "as recent as March 2022 the claimant reported . . . that Emgality was controlling her headaches." [DE 8 at 29]. But in this same March 2022 report, Ms. S also reported that "following each dose of Emgality now, the

headache is well-controlled for only 2 weeks as opposed to entire month previously."

[DE 8 at 1399]. By mentioning only the portion of the treatment record that stated the Emgality controlled her headaches when determining the RFC, the ALJ failed to address evidence about the extent of its effectiveness or otherwise explain how the evidence regarding the short-term relief of her migraines was more persuasive. *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (internal citation omitted); *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003) (observing that an "ALJ may not ignore an entire line of evidence that is contrary to [his] ruling"). Without more, the Court cannot trace the path of the ALJ's reasoning to be assured that the ALJ considered all the important evidence when determining that Ms. S's allegations were not consistent with the record. *Scott*, 297 F.3d at 595. Thus, the Court is left to "speculate as to the basis for the RFC limitations" which it cannot do through its limited review. *See Moore,* 743 F.3d at 1128.

In response, the Commissioner contends that Ms. S's allegations of her symptoms related to occipital neuralgia are not sufficient to require remand, as she does not point to any specific functional limitations. The Commissioner is correct that the mere existence of an impairment or a diagnosis is not determinative. *See Melanie W. v. Saul*, No. 1:19-cv-403, 2020 WL 3056309, at *4 (N.D. Ind. June 2, 2020). Despite this, the Commissioner's response remains unavailing here. First, the ALJ did not discount Ms. S's occipital neuralgia because he found that it did not cause her functional limitations—the ALJ does not appear to consider it in any way. Moreover, Ms. S points to evidence demonstrating that the occipital neuralgia caused her separate head pain—

pain that was not addressed by Emgality injections. *See Robert P. v. Kijakazi*, No. 3:21CV305, 2022 WL 831870, at *10 (N.D. Ind. Mar. 21, 2022) (explaining that the claimant was not required to "to furnish direct evidence that his impairments, for example, would allow him to sit specifically for one hour per day, or lift 10 pounds occasionally") (citing 20 C.F.R. § 404.1520 and 20 C.F.R. § 404.1513). Finally, the ALJ's conclusion about the effectiveness of the Emgality also focuses only on portions of Ms. S's treatment records regarding the relief it provided without also confronting portions of those same records stating that the Emgality only provided Ms. S with relief for a limited amount of time. *Denton*, 596 F.3d at 425 ("An ALJ . . . cannot simply cherry pick facts that support a finding of nondisability . . .."). Thus, the Court finds that remand is appropriate here.

Ms. S also maintains that the ALJ failed to adequately account for her handling and fingering limitation caused by her bilateral carpal tunnel. The ALJ will have the opportunity to fully discuss and reevaluate Ms. S's second allegation on remand. This is not to say that there are no other errors in the ALJ's decision, but the Court need not discuss Ms. S's second argument for remand when errors have been identified in the ALJ's discussion of Ms. S's headaches from both her occipital neuralgia and migraines. On remand, the Commissioner should consider all specifications of error before rendering a decision.

## IV.  CONCLUSION

For the above reasons, this Court cannot find that substantial evidence supports the ALJ's conclusions. Therefore, Ms. S's request for reversal or remand is **GRANTED**. [DE 9].  This Court **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDS** for further proceedings consistent with this opinion.

**SO ORDERED** this 25th day of March 2024.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
